## Case No. 5,830.

### In re GRINNELL et al.

[7 Ben. 42; [1] 9 N. B. R. 29; 21 Pittsb. Leg. J. 82.]

District Court, S. D. New York. Nov., 1873.

LIEN ON BANKRUPT'S PROPERTY—SALE OF PLEDGE BEFORE THE APPOINTMENT OF AN ASSIGNEE—POWER OF THE COURT.

1. Stocks and bonds were deposited with B. B. & Co., bankers, as collateral security for loans to G. & Co., then solvent, but who afterwards became bankrupt. Before an assignee was appointed, B. B. & Co. applied to the court for an order authorizing them to sell the collaterals to reimburse themselves for the loans, which had become due· Held. that the court could not, before the appointment of an assignee, make the order for sale contemplated by the 20th section of the bankruptcy act [of 1867 (14 Stat. 526)], nor authorize any sale which would cut off or affect the rights of an assignee thereafter to be appointed; but that, there being no suggestion of the invalidity of the debt, or of the lien of the petitioners, or that they would not be able to respond for any liability which they might incur by making the sale, an order might be made allowing them to sell the securities at their own risk, and reserving all the rights and powers of the court to hold them to account for the property and proceeds thereof to an assignee, when he should be appointed—a sworn statement of such sale and proceeds to be filed within two days after sale.

2. It is the principle of the bankruptcy act, that all valid liens, which exist on the property of a bankrupt when the bankruptcy proceedings are commenced, are preserved, and will be respected and enforced by the bankruptcy court.

3. But it is confided to that court to determine whether the debt or lien is valid, and to regulate the disposition of the property, and, for this purpose, power is given to the court, in involuntary cases, by the 40th section, to restrain the debtor and any other person from making any disposition of any part of the debtor's property.

4. The filing of a petition in bankruptcy, whether voluntary·or involuntary, if followed by an adjudication, and the appointment of an assignee, operates, from the time of such filing, as a practical restraint on a pledgee of the property of the bankrupt, who is notified of such filing, from disposing of it, otherwise than at his own risk, until the bankruptcy court can act in the premises.

[Cited in Re Duncan. Case No. 4,131; Taylor v. Robertson, 21 Fed. 214.]

[In bankruptcy. In the matter of George Bird Grinnell and Joseph C. Williams.]

J. H. Choate, for petitioners.

BLATCHFORD, District Judge. This is a case of voluntary bankruptcy, the petition in which was filed on the 15th of October, 1873. The formal adjudication was made on the next day. On the 9th of September, 1873, the firm of Blake Brothers & Co. loaned to the firm of George Bird Grinnell & Co., a firm composed of the bankrupts as general partners, and of a special partner, the sum of $100,000, payable on demand, with simple interest, on a pledge and hypothecation of certain collateral securities deposited with the former firm by the latter firm, to secure the

loan. the securities consisting of certain bonds and shares of stock. On the 18th of September, 1873, more shares of stock were added. Some· of the· shares of stock have been sold, and their proceeds applied towards the payment of the loan, and there is now due thereon $76.393.17, with interest from September 30th, 1873. On the 15th of September, 1873, a further loan was made of $25,000, payable on demand, with simple interest, on the pledge and hypothecation, as collateral security, of certain other shares of stock. No part of that loan has been repaid. On the 17th of September, 1873, a further loan was made of $150,000, payable on demand, with simple interest, on a pledge and hypothecation, as collateral security, of certain other shares of stock and certain other bonds. On the 18th of September, 1873, more shares of stock were added. Some of the shares of stock have been sold, and the interest on some of the bonds has been collected, and the proceeds applied towards the payment of the last-named loan, and there is now due thereon $108,781.84, with interest from October 4th, 1873. On the 17th of September, 1873, a further loan was made of $75,000, payable on demand. with simple interest, on a pledge and hypothecation, as collateral security, of certain other shares of stock. On the 18th of September, 1873, more shares of stock were added. Some of the shares of stock have been sold, and the proceeds applied towards the payment of the last-named loan, and there is now due thereon $49,528, with interest from September 30th, 1873. All the said securities, except the shares of stock so deposited on the 18th of September, 1873, were deposited simultaneously with the making of the loans. To further secure said loans, and to cover any deficiency there might be on either of them, after applying thereto the specific securities on which it was made, and specially relating to it, the borrowers, on or about the 18th of September, 1873, deposited with, and pledged and hypothecated to, the lenders, certain other shares of stock and certain other bonds, and, on the 19th of September, 1873, made a further pledge and hypothecation to, and deposit with, the lenders, of certain other bonds. The securities not so sold are still held by the lenders. Each of the loans was made payable on demand, and under an understanding and agreement between the lenders and the borrowers, that, in case of any default in paying the same on demand, the lenders might immediately reimburse themselves for the amount due to them thereon, by a sale of the collaterals given to secure it. On the 20th of September, 1873, the lenders demanded from the borrowers the payment of the amounts due on all of the loans, but none of them were paid.

A petition is now presented to this court. by Blake Brothers & Co., setting forth the above facts. and further stating that they did not. at the time of the taking place of any of the foregoing transactions, know, or sus-

[1] [Reported by Robert D. Benedict, Esq.. and B. Lincoln Benedict, Esq., and here reprinted by permission.]

pect, or believe, and had not been informed, that the borrowing firm, or either of its members, were or was insolvent, or in contemplation of insolvency, or that bankruptcy proceedings were contemplated, or could properly be had by or against them; that they, during all of said times, and especially when the loans were negotiated, were in good standing and credit; that the petitioners supposed, and had good reason to suppose, that they were entirely solvent, and free from embarrassment; that the first meeting of the creditors of the bankrupts will not be held until the 14th of November, 1873; that the petitioners, pursuant to the provisions of the bankruptcy act, have duly proved the said indebtedness, as a debt with security, as above described, against the estate of the bankrupts; and that they desire to sell the said securities, or so many of them as may be necessary for such purpose, and reimburse themselves therefrom for the amount of said indebtedness, and desire that the value of said securities may be ascertained by a sale to be made in such manner as this court may direct. The petitioners· pray that an order may be made by this court, authorizing and empowering them to sell the said securities, or so many and such parts of them as may be necessary to be sold, in order to reimburse themselves the amount due to them on account of said loans, and to .make such sale at public auction, in the city of New York, after three days' notice of the time and place of such sale, by publication thereof in such newspapers, in said city, as the court may designate for that purpose, and after such other notice thereof, and in such manner, in other respects, as the court may direct. Notice of the presenting of the petition, and of a motion for the order prayed for, was served on the attorneys for the bankrupts. They did not appear on the motion. The first meeting of creditors not having been held, no assignee in bankruptcy has, as yet, been appointed or elected.

This is an application to the court to direct a sale of the property, so as to ascertain its value, as between the pledgees of it and the estate of the bankrupts, in order to arrive at a basis for determining whether the pledgees will remain creditors of the estate, after deducting such value from their debt, or whether such value will pay the debt and leave a surplus for the estate. The application is supposed by the petitioners to be such an one as is provided for by the 20th section of the act, which contains this language: "When a creditor has a mortgage or pledge of real or personal property of the bankrupt, or a lien thereon, for securing the payment of a debt owing to him from the bankrupt, he shall be admitted as a creditor only for the balance of the debt, after deducting the value of such property, to be ascertained by agreement between him and the assignee, or by a sale thereof, to be made in such manner as the court shall direct; or the creditor may

release or convey his claim to the assignee upon such property, and be admitted to prove his whole debt. If the value of the property exceeds the sum for which it is so held as security, the assignee may release to the creditor the bankrupt's right of redemption therein, on receiving such excess; or he may sell the property, subject to the claim of the creditor thereon; and, in either case, the assignee and creditor, respectively, shall execute all deeds and writings necessary or proper to consummate the transaction. If the property is not so sold, or released and delivered up, the creditors shall not be allowed to prove any part of his debt."

It is well settled, that a creditor holding security for a debt does not in any manner prejudice his claim to the security he holds by proving his debt, as a debt with security, and setting out in the proof the particulars of the security, and its estimated value. Such a form for a proof of debt is one of the forms prescribed by the supreme court. He does not, by such a form of proof, release his security, and prove his debt as an unsecured debt. On the contrary, such a form of proof insists on and maintains the security. Moreover, proving a debt, by such a form of proof, is a necessary prerequisite, if a secured creditor desires to maintain his security, and, at the same time, invoke the mode of procedure provided for by the 20th section. This is apparent, from a consideration of various provisions of the act, and the same provisions also show that the 20th section can have no operation until an assignee has been appointed or elected. The 14th section provides, that, when an assignee is appointed and qualified, and an assignment is made to him of all the estate, real and personal, of the bankrupt, such assignment shall relate back to the commencement of the proceedings in bankruptcy (which commencement is the filing of the petition, if followed by an adjudication), and that thereupon, by operation of law, the title to all such property and estate, both real and personal, shall vest in such assignee. The 14th section also provides, that all property conveyed by the bankrupt in fraud of his creditors, and all his rights of action for property or estate, real or personal, and for any cause of action which the bankrupt had against any person, arising from contract, and all his rights of redeeming such property or estate, shall, in virtue of the adjudication of bankruptcy, and the appointment of the assignee, be at once vested in the assignee. The 14th section also provides, that "the assignee shall have authority, under the order and direction of the court, to redeem or discharge any mortgage or conditional contract, or pledge, or deposit, or lien upon any property, real or personal, whenever payable, and to tender due per-. formance of the condition thereof, or to sell the same, subject to such mortgage, lien, or other encumbrances." The 17th of the general orders in bankruptcy, prescribed by the·

supreme court of the United States, to carry out the foregoing provision of the 14th section, declares, that, "whenever it may be deemed for the benefit of the estate of a bankrupt to redeem and discharge any mortgage, or other pledge, or deposit, or lien upon any property, real or personal, * * * the assignee, or the bankrupt, or any creditor who has proved his debt, may file his petition therefor in the office of the clerk of the district court, and thereupon the court shall appoint a suitable time and place for the hearing thereof," and the publication of a notice of ten days is provided for, "so that all creditors and other persons interested may appear and show cause" why the prayer of the petition should not be granted. The supreme court have also prescribed a form (Form No. 34) for a petition by the assignee, setting forth that a certain portion of the bankrupt's estate, describing it and its estimated value, is subject to a mortgage or a lien, or, if personal property has been pledged or deposited, and is subject to a lien, describing its nature, and praying to be allowed to redeem the property from the lien, or to sell it subject to the lien. The 1st section of the act gives power to the court to ascertain and liquidate the liens, and other specific claims, on the assets of the bankrupt, and to adjust the various priorities and conflicting interests of all parties, and to marshal and dispose of the different funds and assets, so as to secure the rights of all parties, and due distribution of the assets among all the creditors. The 22d section provides, that the court may examine into claims, and shall reject all claims not duly proved, and all claims founded on fraud or illegality. The same section also provides the mode in which claims shall be duly proved, and prescribes what the deposition for proof shall contain, and says, that, to entitle a claimant against the estate to have his demand allowed, the deposition must set forth certain specified particulars, among which is, whether any and what securities are held for the demand, and that no other security has been received than that so set forth.

In view of all these provisions, it is impossible to say that the sale contemplated by the 20th section can take place before an assignee is appointed. The assignee is the only person who can represent the creditors other than the particular secured creditor. Whether such other creditors are wholly unsecured or insufficiently secured, they have an interest in seeing that the debt of the particular secured creditor is duly proved, and is not fraudulent or illegal, and that the securities held for it are applied on it at their proper value, whether such value is ascertained by agreement between such particular secured creditor and the assignee, or by a sale. Before such application of the securities is made, the assignee has a right, on behalf of such other creditors, to elect whether he will redeem the pledged property, by pay-ing the debt and taking the property, or whether he will ask to have it sold subject to the lien, or whether he will give it up to the secured creditor on receiving an agreed sum as its excess of value over the debt. Nothing of all this can be done until there is an assignee.

But the distinct principle of these provisions is, that all valid liens which exist on the property of a bankrupt when the proceedings in bankruptcy are commenced are preserved, and will be respected by the bankruptcy court, and enforced, and allowed to be paid out of the proceeds of the property on which they are liens. It is, however, confided to the bankruptcy court to determine whether the debt is valid, and whether the lien is valid, and to regulate the disposition of the property on which the lien is claimed. For this purpose, in involuntary cases, power is given to the court, by the 40th section, to restrain the debtor and any other person from making any transfer or disposition of any part of the debtor's property not excepted by the act from the operation thereof, and from any interference therewith. This power is to be exercised when the order to show cause is issued, and is intended to restrain the disposition of the debtor's property until there can be an adjudication of bankruptcy, and proper proceedings thereafter. The same effect results from the filing of a voluntary petition, for the debtor, in filing it, brings all his property under the protection and within the control of the court. It by no means follows, however, that the court will allow the assignee, or any of its officers, to take from the possession of pledgees occupying the position of bona fides and solvency which appears to be that of the present petitioners, property of the character of that pledged to them in the present case, unless such disturbance of their possession shall be adjudged in the course of, or as the result of, a suit to be brought by the assignee against them, to set aside the pledge as fraudulent or void, for some cause for which the assignee has the right conferred on him, by the act, to set it aside in such a suit. Nor does it follow that, the debt and the lien not being disputed by the assignee, the court, while regulating the time and manner of selling such pledged property, will take it from the possession of such pledgees before, or for the purposes of, the sale, or take from their possession so much of its proceeds as may be necessary to discharge the debt due to them. It, nevertheless, remains true, that the filing of a petition in bankruptcy, whether voluntary or involuntary (if followed by an adjudication and the appointment of an assignee), operates, from the time of such filing, as a practical restraint on a pledgee of the property of the bankrupt, who is notified of such filing, from disposing of it otherwise than at his own risk, until the bankruptcy court can act in the premises. For it was held by Judge

Woodruff, in the circuit court for this district, in the case of Miller v. O'Brien [Case No. 9,586], that a sheriff who, after proceedings in bankruptcy are commenced, wherein an assignee is appointed, levies an execution upon and sells property which was of the bankrupt, is liable to the assignee for the proceeds of such property, although he pays such proceeds to the execution creditor before receiving actual notice of the bankruptcy. The contingency of the bankruptcy of a pledgor, before the debt is paid, is one which, so long as the bankruptcy act exists, with the provisions now found in it, must enter into and form a part of every contract of pledge. The moment the pledgor is adjudged bankrupt, the pledgee can no longer deal with him as continuing to be the owner of the property, or deal with the property as continuing to be the property of the pledgor. If a demand of payment be necessary to be made of the pledgor, or if a notice of sale of the pledged property be necessary to be given to the pledgor, such demand cannot be made on, or such notice given to, the pledgor, after the adjudication, so as to cut off any rights which will belong to the assignee. It is as if the pledgor were to die, and there were to be an interval between his death and the appointment of his executor or administrator, during which there would be no one to represent the estate of the pledgor and to receive a demand or a notice. Contingencies of this character are incident to the remedies on all contracts. The right to sue for the breach of a contract is suspended by the death of the person to be sued. There is no one to respond for his estate until a legal representative of it is created. The same thing occurs on an adjudication of bankruptcy. The pledgees who make the present application can, however, if they choose, take the risk of the validity of their debt, and of the validity of their lien, and of the allowance of a proper value for the pledged property, and, assuming such risk, may sell such property. But the court can make now no order directing a sale, or any order which shall cut off or affect any rights of an assignee in bankruptcy who may hereafter be elected or appointed. Irrespective of the views already suggested, it is against the principles of justice to do anything which may conclude the rights of an absent party. There is nothing to suggest the invalidity of the debt or of the lien of the petitioners, or that they are not fully able to respond pecuniarily for any liability they may incur by making the sale. Under such circumstances, the court is disposed to do all that is possible, to show that the petitioners have applied to the court, and, failing to obtain the order asked for, have been granted what the court could grant. An order may, therefore, be entered, that the petitioners may, notwithstanding the pendency of these proceedings, sell, in any manner authorized by the terms of their contracts with the bank-

rupts, and by the laws of the state of New York, all the stocks and bonds remaining in their hands, mentioned in their petition, and may use and dispose of the proceeds of the stocks and bonds so sold as if they were their own, subject, however, to, and reserving the right and power of, this court to ascertain and liquidate the liens and specific claims of the petitioners on said securities or the proceeds thereof, and to marshal and dispose of such proceeds; but the order must provide that it is not to be construed as a direction, or as affecting any of the rights of any assignee in bankruptcy who may be appointed herein, and that it is made on condition that the petitioners file, in this court, within two days after the future sale of any of said securities, a sworn statement of the particulars of such sale.

[On the same point, see Case No. 5,829.]